Allen, J.
dissented. He said—The case depends upon the sufficiency of the record of the county court, to support the plea of the defendants. The plaintiffs replied nul tiel record, and it devolved on the defendants to adduce a record corresponding with that set forth in their plea.
The law directs the clerk of the county court to keep minutes of the proceedings of the court, and these minutes are to be read and signed by the presiding justice, before an adjournment. From the minutes, briefly entered,'a record is to be made.up at large. In Cogbill v. Cogbill, judge Roane observed, that a distinction is properly taken between the records of the county court, drawn up by the clerk in his office, from the minutes taken in court, and the records of the superior court, drawn up during the term, read in open court, and signed on the next day by the judge. Although the record of the county court, when drawn up, must be justified by the minutes; yet the minutes do not disclose all that a full record, when drawn out at large, properly exhibits. Thus in Eubank v. Rall’s ex’or, the entry of the judgment on the minute book was, “ Plea waived and judgment for specialty and costs.” This entry, it was held, authorized the clerk, in making up a complete record, to enter a judgment for the penalty of the specialty to be discharged by the payment of the sum actually due with interest. It is the usual practice (as was stated at the bar) when a trial is had, to make a brief minute, frequently not more than these words, *107 li A. B. v. C. D. Jury to wit (naming them). Verdict for plaintiff, and judgment.” When a full record is made up, the clerk is not confined to the entry in the minute hook. He looks to the declaration and specialty in the one case, to the verdict as written out and signed by the jury in the other. And it was well said, that were it otherwise, few judgments of the county courts could be sustained.
The entry in the present case was very brief. It is an entry not in a case depending between suitors in an action between them. The court was exercising its power in reference to a matter of which jurisdiction was conferred upon it, by statute, as a court of probat. On all such subjects, (and in many other cases, as where the court acts as a police court,) the entry is brief. To ascertain its meaning, we must consider it in connexion with the law which authorizes the proceeding; and if the court has done what the law justified, and that sufficiently appears, its act should be maintained: otherwise serious injury may be frequently sustained by innocent individuals, from the carelessness or ignorance of officers over whom they have no control.
The statute provides, that when securities of executors or administrators conceive themselves in danger, and petition the court for relief, the court shall summon the executor &c. and shall have power to order that he give counter security, or execute a new bond. If counter security is required and given, the bond is made payable to the party petitioning for relief,- but he is not discharged from the obligation of his first bond. If a new bond is required, it is made payable to the sitting justices, the penalty is to be equal to the penalty of the first bond, and the form of the condition is prescribed by the statute ; and upon its execution, all the securities to the former bond are discharged from the obligation thereof. No particular mode of proceeding is pointed out. The party conceiving himself in danger petitions for relief; *108 the court.'hears the parties, and gives to the case such direction as it deems best, and, in its discretion, either requires counter security or a new bond.
In the case before us, the entry on the minute book was> a motion for counter security; summons acknow¡edged; appearance of, the defendant, who tendered Mayes as surety; whereupon ordered} that Gowing be dismissed from further securityship. A bond is certified, in a penalty equal to the penalty of .the first bond, signed by Williamson the administrator and Mayes, dated the day the order was made, with condition in the form prescribed for a new bond, and made payable to the sitting justices. But it is objected, that the minute does not shew that a bond was executed or tendered, and therefore we have no right to look into this bond: that to consider this bond as part of the record, would put it into the power of the clerk to exhibit a bond when none may have been, given, or at best to substitute his recollection for the record. It seems to me, this is giving too, narrow a construction to the entry. By the entry it appears, that the administrator tendered Mayes as surety. How could he tender him as surety for him as adminis-1 trator, but by the execution of a bond ? Until that was done, he was not surety. But the order proceeds, that upon his being so tendered, Gowing was discharged. We must bear in mind what the court was engaged in, when acting upon this subject; the power it possessed, and intended to exercise. The surety in the former bond was before it, asking relief; it could give it in one of two modes, by requiring counter security or a new bond; if the first had been required, the surety was not discharged; if the latter, he was. The order shews, that upon hearing this matter, the administrator tendered Mayes as surety, which he could not have become, until he had executed a bond ,• whereupon, the petitioner was discharged. It is. true, that by operation of law all were discharged upon the execution of a new bond, and *109 therefore the order discharging the petitioner was unnecessary; but the fact of making such an order, shews that a bond was given; for until that was done, the court could not have discharged him from his security-ship. It was not necessary to describe the bond particularly; any expressions which indicated the execution of the bond would suffice. No order by which an official bond is shewn to be executed, sets it out in hcec verba. In all cases of the kind, the expression used is, that the administrator with A. B. &c. his sureties executed a bond in the penalty fixed by the court; and I suspect, if the entries were examined, it would frequently be found that the sureties are not named in the order. But it appearing that a bond of a particular kind has been required and given, the bond certified by the sworn officer, as the bond, must be taken as the one given. And we have the same right to apprehend that the clerk would substitute a different specialty or verdict, in the cases before mentioned, as that he would substitute a different bond in a case of this kind.
The order shewing, as I think, by a fair construction, that a bond with Mayes as surety was executed; the bond found among the records, of that date, corresponding with the order, and fulfilling all the requirements of the law, must be taken as the bond so executed, and constitutes a part of the record, as much so as the specialty or verdict alluded to. If it is part of the record, and can be looked to for the purpose of ascertaining what was done, all difficulty it seems to me is removed; for it shews that a new bond was required, upon the execution of which the sureties in the first obligation were discharged.
It is said, the record produced does not correspond with that described in the plea: 1. that by the plea it is averred, that a petition was preferred, whereas the order shews a motion was made. This does not seem to me to be a material variance. The plea describes the record *110 according to its legal effect, and sets it out as the clerk ° ° would extend the order in making up a full record. The statute provides that when the sureties conceive themselves in danger, “ and shall petition for relief ” &c. A is the form of bringing the matter to the notice of the court; but this is made ore terms ; no formal petition in writing is ever filed. When the relief is thus asked for, a summons is awarded; and whether the clerk enters, that upon the motion of the party a summons is awarded, or prefaces it with the words that A. B. having petitioned the court, on his motion a summons is awarded,—it would not change the legal effect of the proceeding. 2. That the plea sets out a petition for relief, in general terms; but the record shews a motion for counter security. The legal effect of the proceeding is not varied by the terms of the motion. The statute authorizes the petition for relief; the court decides upon the mode of relief. In whatever mode the party may seek relief, the power of. the court is not limited to that mode ; and however the subject is brought to its notice, it is tantamount to a general petition for relief, and should be so described. 3. That the plea avers that bond was required ; the record merely shews that Mayes was tendered as security. But the bond, as I have endeavoured to shew, is part of the record; and if so, the condition shews, that a new bond was required. 4. That the plea alleges a discharge of all the sureties by operation of law; whereas the order shews, that Gowing only was dismissed from the securityship. The law provides, that upon the execution of the new bond, the sureties to the first shall be forthwith discharged; and no order would be necessary to effect this. It was only necessary for the defendants to set out so much of the order as shewed the requirement and execution of the bond; having done that, they establish enough to discharge them; and it was proper to aver it as arising from operation of law. The omission to set out in the plea, that which need *111 not have been done by the court, does not shew a variance between the plea and so much of the order as they have correctly described.
It is supposed, that if we construe the proceedings here as discharging the sureties to the first bond, the justices may have subjected themselves to a liability for taking inadequate security, when in fact they only intended to permit Mayes to substitute himself as surety in Gowing’s stead. Such might be the consequence, if my construction of their proceedings is the proper one. They must be presumed to be acquainted with the law under which they were acting; and if so, they knew they could not discharge Gowing except upon the execution of a new bond. That they intended to discharge him is clear, for they have said so; and the legal consequence is the discharge of the others. If this was more than they intended, their error ought not to injure the surety. He had asked what they conceded he was entitled to; it was for them to prescribe the mode; and having done so, the surety had a right to repose in safety. He should not be deprived of the relief which his vigilance had procured, because the court, in extending it to him, had inadvertently discharged others and thereby incurred a liability themselves.
It seems to me, upon the whole case, that the sureties to the first bond were discharged, and that the matter constituting the discharge has been properly set out in the plea.
Judgment reversed, and judgment entered for the plaintiffs ; and cause remanded, with directions to award a writ of enquiry of damages.